STARFLIGHT, INC. and The Insurance Company of the State of Pennsylvania, Plaintiffs–Appellees

v.

Harold THONI, Dorothy Lewis Thoni, and the Administrator of the Estate of Harold Vincent Thoni, Deceased, Defendants–Appellants.

Supreme Court of Tennessee, at Nashville.

June 26, 1989.

Cindy L. Porter, Levine, Mattson, Orr & Young, Nashville, for plaintiffs-appellees.

Mary A. Parker, Jennifer Johns, Nashville, for defendants-appellants.

## OPINION

HARBISON, Justice.

This case was instituted by Starflight, Inc. and its workers' compensation insurer to determine the status of a co-pilot of one of the company's planes who was killed in a crash near Oklahoma City on November 5, 1985. The trial court held that the co-pilot was an employee within the meaning of the Tennessee workers' compensation statute, thereby making applicable its exclusive remedy provisions and precluding any other form of relief. T.C.A. § 50–6–108. The preponderance of the evidence supports the judgment of the chancellor, and it is accordingly affirmed.

The employer in this case, Starflight, Inc., was a small commercial air cargo carrier. It owned two planes and employed ten full-time pilots. Its principal business was chartering planes with the United States government to transport munitions for the armed services. A pilot and a co-pilot constituted the crew for each flight. Most of the pilots were older, experienced commercial pilots. As a rule the co-pilots were younger newly-licensed personnel who were seeking to gain experience and flight time. These co-pilots were not employed on a full-time basis by the company, but were engaged as needed to assist the regular pilots and to accompany them on scheduled flights.

Personnel of the employer prepared the flight schedules, designating the dates and times of flights, the aircraft, the captain, the co-pilot, the destinations of each flight and pertinent information concerning the military installation and personnel involved with the particular cargo.

Harold Vincent Thoni was twenty-four years of age at the time of his death on November 5, 1985. He had been trained as a pilot and had his commercial license prior to being employed by Starflight, Inc. on September 22, 1985. He worked for that company for about six weeks until the time of his death. Previously he had flown as a co-pilot for other air carriers. His father testified that at the time of his death the decedent had no other source of income except his employment with Starflight, Inc. His father owned a retail liquor business and expected to give this business to his

son in the future. Young Thoni worked in the business when he was not flying, if he wished to do so, but he was not required to do so. He was accepting employment such as that offered by Starflight, Inc. in order to accumulate time so that he could ultimately obtain a better job, such as an airline pilot. His family helped support him, because his compensation from Starflight, Inc. was not enough to sustain him independently.

During the six weeks in which he worked for Starflight, Inc., young Thoni did not fly for any other company, although he could have done so had he had the free time and had other work been available. Mrs. Patricia Taylor testified at trial that she prepared the flight schedules and that young Thoni flew for Starflight, Inc. during each of the weeks between the time of his initial employment and the date of his death. She said that the schedules usually provided for the flights to begin on Monday and for the crew to return during the week, usually near the following weekend. The flight log of the decedent, which was filed in evidence, does not indicate that he flew for any other company or accepted any other outside employment after September 22, 1985.

It is uncontradicted in the record that the co-pilot was at all times during flight subject to the direct control and command of the pilot. In each instance the pilot was a full-time company employee. Company officials controlled the details of the work, and the record establishes that they had the right to terminate or discharge any pilot or co-pilot at any time. On one occasion the company manager did discharge young Thoni because the latter was consistently late for flights. Subsequently the manager reconsidered and re-employed the decedent.

It is also clear from the record that the employer had the right to and did in fact change schedules and routes while planes were in flight. Sometimes this was done by radio contact and at other times by contacting persons at a landing field and

requesting the pilots to call personnel at the central office for directions.

The co-pilots were paid on an hourly basis. There were no deductions withheld for federal income taxes or social security. It is uncontradicted in the record, however, that this same method of payment was utilized for the full-time pilots as well as the co-pilots.

The employer furnished the plane and all necessary equipment for the flights, except that a co-pilot such as Thoni could bring aboard his own radio headset and a standby radio. The company had this equipment available for use by the co-pilots, however, if they did not bring their own equipment.

Both the co-pilot and the pilot, admitted to be a full-time company employee, were killed in the crash which occurred on November 5, 1985. An action for wrongful death of Thoni was instituted against the manufacturer of the plane which he was flying, officials at the Oklahoma City airport and also against the employer, Starflight, Inc., the latter being sued on the theory that Thoni was an independent contractor rather than an employee.

The strongest evidence in the case to sustain the contention that the relationship of Thoni to Starflight, Inc. was that of an independent contractor was the method of payment. This, however, is only one factor among a number of indicia which are relevant to the determination of the relationship from a legal standpoint. Practically all of the other factors which have been referred to in the reported cases support the conclusion of the chancellor that the relationship was one of employer-employee.

Thoni was not a specialist called in for some particular job, like a harbor pilot to steer a vessel. He was a licensed professional person, and both he and the employer had to comply with numerous federal regulations in the work which he was performing. Nevertheless, the proof establishes that he was not hired for a particular term but was subject to termination at will. It also establishes that the employer had

the right to control the details of the work, the co-pilot being subject at all times to the directions of the pilot, who was captain of each flight. The co-pilot was not required to furnish any equipment, and the employer was engaged in the regular business of chartering its planes for commercial flights.

Appellants rely upon the case of *Fisher v. J.F.G. Coffee Co.*, 221 Tenn. 333, 426 S.W.2d 502 (1967) in which the widow of an airline pilot brought suit against the charterer of a plane to recover death benefits under the workers' compensation statutes. In that case the charterer, J.F.G. Coffee Company, did not own any planes and was not in the business of operating aircraft. From time to time its officials did rent aircraft for company business. On the occasion in question it chartered a plane from the owner, and employed the pilot for a particular trip at an hourly rate plus expenses. On the flight the plane crashed, and all persons aboard were killed.

In that case the evidence established that the charterer did not have the right to exercise control over the pilot. It could not change the destination or alter the fixed flight schedule without the consent of the pilot. It paid the pilot by the hour at the completion of each flight, and the Court pointed out that this was the strongest factor indicating that the pilot might be deemed an employee rather than an independent contractor. The Court said:

> The second factor, method of payment, presents the only strong evidence deceased was an employee rather than an independent contractor. Deceased had made a number of flights similar to the one here at issue and upon completion of each flight would bill his hours and expenses to the company renting the plane. Deceased was paid the full amount of his bill without deductions for income tax or social security payments. The trial

judge found these payments to deceased were not on a recurring basis but more closely resembled an arrangement where a worker was paid on a completed or single job basis.

221 Tenn. at 335, 426 S.W.2d at 503.

In that case the charterer did not furnish any of the equipment, and the Court deemed this to be strong evidence that the deceased was not a company employee. Further, there was no right to terminate the employment of the deceased during the course of the flight for which the plane had been rented.

Based on these circumstances the pilot in *Fisher* was deemed to be an independent contractor, not an employee of the charterer.

In our opinion *Fisher v. J.F.G. Coffee Co., supra* affords little support for the contention of appellants that the decedent in the present case was an independent contractor and not an employee of the owner of the plane. The numerous factors or considerations which enter into the determination of the legal relationship in cases such as these are discussed in the *Fisher* case, *supra*, as well as in more recent cases such as *Carver v. Sparta Elec. System*, 690 S.W.2d 218 (Tenn.1985); *Jones v. Crenshaw*, 645 S.W.2d 238 (Tenn.1983); and *Wooten Transports v. Hunter*, 535 S.W.2d 858 (Tenn.1976). No one fact is deemed to be determinative, but the right to control and the right to terminate are usually deemed to be strong evidence of an employer-employee relationship. The facts that the employer does not withhold income taxes or social security and that the employee furnishes his own tools are not sufficient, in themselves, to establish an independent contract relationship.[1] *See Carver v. Sparta Elec. System, supra*, 690 S.W.2d at 221.

The judgment of the chancellor is affirmed at the cost of appellants. The cause

---

1. Under the Fair Labor Standards Act, the determination of "independent contractor" status depends on a case by case analysis of the entire employment relationship. This determination cannot be based on an "isolated factor" but necessarily involves an examination of the "whole activity." *See* 29 CFR § 780.330 (1988).

will be remanded to the trial court for collection of costs accrued there and for any other proceedings which may be necessary.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.