Ronnie GALLOWAY, Plaintiff–Appellee,

v.

MEMPHIS DRUM SERVICE and Liberty Mutual Insurance Company, Defendants–Appellants.

Supreme Court of Tennessee,
at Memphis.

Dec. 30, 1991.

Steven G. Roberts Memphis, for plaintiff-appellee.

Ricky D. Click, Johnson & Bateman, Memphis, for defendants-appellants.

## OPINION

DROWOTA, Justice.

This workers' compensation case presents an appeal by Defendant-employer and its insurance carrier of the trial court's award of one hundred percent (100%) permanent partial disability to Plaintiff-employee Ronnie Galloway's right eye. The issue presented is whether, at the time of the injury, Plaintiff was an employee of Defendant Memphis Drum Service or an independent contractor.

### I.

In 1986, Plaintiff was hired by Memphis Drum Service as a part-time truck driver. Also around this time, Plaintiff and his brother-in-law formed, as a partnership, an overhead door business. Although the business, R & R Overhead Door, was short-lived, it did perform three jobs for Memphis Drum. Memphis Drum paid R & R for these jobs separate and apart from payment made to Ronnie Galloway as a Memphis Drum truck driver. One of these jobs, in April 1987, consisted of Mr. Galloway installing a spring in a Memphis Drum overhead door. As it turned out, this new spring was not the correct size.

In early 1987, Plaintiff's brother-in-law went back to work for another company and Plaintiff was driving full-time for Memphis Drum. An examination of the record leads us to conclude that R & R ceased doing business as of April 1987.

On Saturday, November 21, 1987, Plaintiff reported to work at Memphis Drum in order to (1) replace, with the correct size, the door spring he previously installed in April and (2) perform a minor adjustment on his Memphis Drum truck to connect its heating system. On this Saturday afternoon, the only employees present on the Memphis Drum premises were Plaintiff and Memphis Drum's owner and President, Mr. David E. Wingard.

While the exact chronology of events is uncertain, it appears that Plaintiff and Mr. Wingard made an initial attempt to replace the door spring. Mr. Wingard testified that he operated a forklift in order to assist Plaintiff. However, upon attempting to install the new spring, Plaintiff discovered he was missing a necessary part. Mr. Wingard testified that at this point he instructed Plaintiff not to proceed further with the repair until Plaintiff's brother-in-law brought the proper part and would be there to assist him.

Plaintiff informed Mr. Wingard he was going to connect the heat on his company truck while waiting for his brother-in-law to bring the part. Mr. Wingard then left, leaving Plaintiff alone with the ultimate responsibility of securing the premises upon Plaintiff's departure.

Now alone, Plaintiff testified that while gathering the tools necessary to connect the truck's heat, he noticed the part required to complete the door. Therefore, he resumed working on the door until another part broke, ending all opportunity to repair the door that day. At about 4:30 p.m., having completed the truck maintenance, Plaintiff testified that he entered the main building (building on whose door he had been working that day) to make sure the power was off before leaving. Plaintiff's next recollection was regaining consciousness while lying on the floor at 7:30 p.m.

Although Plaintiff drove home that evening, his father took him to the hospital the following day where he underwent reconstructive surgery to his right eye involving the implantation of five metal braces. Plaintiff introduced medical testimony establishing he suffers permanent double vision in his right eye. The trial court found that Plaintiff's injury arose out of and was sustained during the course of his employment with Defendant Memphis Drum. Basing its determination on a consideration of the physical requirements and safety regulations for work as a truck driver, the court awarded Plaintiff one hundred percent (100%) permanent disability to the right eye.

Defendants assert Plaintiff was injured while working on the overhead door when a tension spring slipped from the door track and an attached piece of metal struck him in the eye. Mr. Wingard's testimony comparing the condition of the door when he

left on Saturday afternoon with its condition when he next inspected it after Plaintiff's injury supports this contention.

## II.

The standard of review by this Court in workers' compensation cases is *de novo* upon the record, accompanied by a presumption of the correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e) (Supp.1991). This standard of review requires us to examine, in depth, a trial court's factual findings and conclusions. *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 675 (Tenn.1991). We are thus not bound by a trial court's factual findings but instead conduct an independent examination to determine where the preponderance of the evidence lies. *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn.1988).

Pursuant to this examination we find that the preponderance of the evidence supports Defendants' explanation of the circumstances surrounding the injury, namely that Plaintiff was injured when a tension spring slipped from the door track causing a metal strip to violently strike Plaintiff's cheek and eye. However, because we also find that Plaintiff was, at the time of the injury, Defendant Memphis Drum's employee, we affirm the trial court's award.

Defendants assert Plaintiff's injury occurred while Plaintiff was working on the overhead door as an independent contractor and that he failed to prove he was an employee who suffered an accidental injury arising out of and in the course of his employment. While a plaintiff in a workers' compensation action has the burden of proving each element of his case by a preponderance of the evidence, *King v. Jones Truck Lines*, 814 S.W.2d 23, 25 (Tenn.1991), once it is established that an employment relationship exists, the burden is on the employer to prove the worker was an independent contractor rather than an employee. *See Jones v. Crenshaw*, 645 S.W.2d 238, 240 (Tenn.1983); *Butler v. Johnson*, 221 Tenn. 366, 374, 426 S.W.2d

515, 519 (1968); *Seals v. Zollo*, 205 Tenn. 463, 472, 327 S.W.2d 41, 45 (1959). In addition, because "the Workers' Compensation Law must be rationally but liberally construed to promote and adhere to the Act's purpose[ ] of securing benefits to those workers who fall within its coverage," *Hodge v. Diamond Container General, Inc.*, 759 S.W.2d 659 (Tenn.1988), this Court will resolve doubts in favor of a finding that a worker is an employee rather than an independent contractor. *See Armstrong v. Spears*, 216 Tenn. 643, 647–48, 393 S.W.2d 729, 731 (1965); *Barker v. Curtis*, 199 Tenn. 413, 419, 287 S.W.2d 43, 46 (1956).

Among the factors to be considered by a trier of fact in determining whether a work relationship is that of employer-employee or independent contractor are "(1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment, (4) the freedom to select and hire helpers, (5) the furnishing of tools and equipment, (6) self-scheduling of work hours, and (7) being free to render services to other entities." *See Bargery v. Obion Grain Co.*, 785 S.W.2d 118, 119–20 (Tenn.1990) (citing *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn.1982)). While no single factor is determinative, this Court has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised. *See Stratton v. United Inter–Mountain Telephone*, 695 S.W.2d 947, 950 (Tenn.1985); *Carver v. Sparta Elec. Sys.*, 690 S.W.2d 218, 220 (Tenn.1985).

Having carefully reviewed the record, several considerations lead us to conclude that Plaintiff was an employee, not an independent contractor, while engaged in repairing the door. First, Mr. Wingard, the owner and President of Defendant Memphis Drum, had been actively involved with Plaintiff earlier in the day as they attempted to repair the door. Not only did he participate by operating a forklift during the first repair attempt, but, when this attempt failed, he instructed Plaintiff to "leave everything laying right there" and

to not "get back up there and mess with it" until his brother-in-law arrived to assist Plaintiff. These facts clearly indicate that Mr. Wingard was exercising control and direction of the work beyond that necessary merely to achieve a particular result. This degree of control is inconsistent with an independent contractor relationship, an independent contractor being "one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result." *Barker*, 199 Tenn. at 418, 287 S.W.2d at 45 (quoting *Odom v. Sanford & Treadway*, 156 Tenn. 202, 207, 299 S.W. 1045, 1046 (1927)).

Second, nothing in the record suggests Memphis Drum's right to terminate Plaintiff at will was in any way restricted. The power to terminate is another significant indicator of an employer-employee relationship because this power is inconsistent with the full control over work activities usually retained by an independent contractor. *See Wright v. Knox Vinyl & Aluminum Co.*, 779 S.W.2d 371, 374 (Tenn.1989); *Carver*, 690 S.W.2d at 220; *Masiers*, 639 S.W.2d at 656. Here, the parties' relationship was at will. No contract was introduced evidencing the parties' intent to be bound for a specific term or until the completion of a particular task. No evidence was presented indicating Plaintiff was performing services pursuant to a warranty Plaintiff previously gave respecting work performed by him as an independent contractor.

█ Finally, Plaintiff had on some, but not all, previous occasions been paid separately for work he performed on Memphis Drum's overhead doors. These separate payments did not reflect deductions for federal income tax or social security. While this method of payment does weigh toward finding an independent contractor relationship, it is but one factor among many to be considered. *See Starflight, Inc. v. Thoni*, 773 S.W.2d 908, 909 (Tenn. 1989). In any event, because Plaintiff had not always been paid separately for his overhead door work, and because there was no proof he was to be paid separately for performing the work on this particular occasion, little or no weight can be accorded this factor.

 Defendants also contend that the trial court erred in its determination that Plaintiff was injured to the extent of one hundred percent (100%) permanent partial disability to the right eye. Adequate vision is essential in order to drive a truck. The record reflects expert medical testimony to the effect that Plaintiff should not be driving due to his visual impairment. The evidence does not preponderate against the trial court's award of one hundred percent (100%) permanent partial disability to the right eye.

Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are taxed to Appellants.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.