# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| DEBORAH TUGGLE, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Shelby Circuit No. 62811 T.D. |
| | ) | |
| VS. | ) | Appeal No. 02A01-9606-CV-00147 |
| | ) | |
| SHELBY COUNTY GOVERNMENT, | ) | |
| and JAMES BROWN, In His Official | ) | |
| Capacity as Executive Director of | ) | |
| OAKVILLE HEALTH CARE CENTER | ) | |
| | ) | |
| Defendants/Appellants. | ) | |

FILED

May 20, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE GEORGE H. BROWN, JR., JUDGE

**CARROLL C. JOHNSON**
Memphis, Tennessee
Attorney for Defendants/Appellants

**JOEDAE L. JENKINS**
Memphis, Tennessee
Attorney for Plaintiff/Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this workers compensation case, Deborah Tuggle ("Plaintiff") seeks benefits for

injuries sustained while weighing a patient at the Oakville Health Care Center, an agency of Shelby County Government ("Defendant").[1]  The trial court awarded the Plaintiff $41,463.80 based upon a forty-five percent permanent partial disability rating to the body as a whole; $4,895.29 based upon a temporary total disability of 21.2 weeks; $1,329.00 for past medical expenses; and all future medical expenses reasonably incurred by Plaintiff for treatment of her cervical and lumbar strain and bilateral carpal tunnel syndrome. The Defendants appeal the judgment of the trial court arguing that the Plaintiff did not sustain any permanent disability which arose out of and in the course of her employment; and, alternatively, if the Plaintiff did sustain any permanent disability arising out of and in the course of her employment, then the trial court's award of damages was excessive.  For the reasons stated hereafter, we affirm the judgment of the trial court.

**FACTS**

On January 15, 1985, Plaintiff began working at the Oakville Health Care Center as a certified nursing assistant.  As a nursing assistant, Plaintiff dealt with comatose and handicapped patients as well as with patients who had suffered heart attacks and strokes. Plaintiff's job entailed feeding, bathing, turning, weighing and transporting the patients.

While weighing a patient on July 31, 1993, the Plaintiff injured her shoulder, arm, neck and back when attempting to keep the patient from falling. Plaintiff immediately reported the incident to the nursing supervisor and complained of pain in her back, neck and shoulders.  Plaintiff was then sent by her employer to the emergency room at Eastwood Hospital .

After examining the Plaintiff, a doctor at Eastwood Hospital gave her medication and told her to call the Memphis Orthopedic Group for further treatment if her condition had not improved by the following Monday.  Not feeling any better by Monday, August 5, 1993, Plaintiff called the Memphis Orthopedic Group and scheduled an appointment with Dr.

---

[1]Shelby County is not subject to the Tennessee Workers Compensation Act, but does compensate employees injured on the job pursuant to County Policy.

Ragsdale. Complaining of numbness in her shoulder, arm and throughout the right and left sides of her body, Dr. Ragsdale examined the Plaintiff, prescribed muscle relaxers and sent her to therapy.

In August 1993, Plaintiff began visiting physicians at HealthSouth Sports Medicine and Rehabilitation Center ("HealthSouth"). Plaintiff's HealthSouth medical records reveal as follows: Plaintiff complained of constant pain in her right shoulder and radiating pain and numbness in her right hand and third digit on August 6, 1993. On August 12, 1993, Plaintiff stated that her shoulder pain was "not as intense as before and is coming and going now instead of constant." On August 17, 1993, Plaintiff stated that "she feels pain in shoulder joint today and arm feels heavy." On August 23, 24, 30 and 31 1993, Plaintiff complained of pain. On September 9, 1993, Plaintiff complained of numbness and pain in her right shoulder and arm. Likewise, Plaintiff complained of numbness in her right shoulder and arm and pain in her right shoulder on September 14, 1993.

Plaintiff received a letter from her employer dated September 8, 1993 informing her that an appointment had been scheduled for her on September 14, 1993 with Dr. Mark Harriman, an orthopedic surgeon. After performing a physical examination of the Plaintiff on September 14, 1993, Dr. Harriman found nothing wrong with her and recommended that she return to work. Plaintiff returned to Dr. Harriman on September 21 and 24, 1993; and Dr. Harriman again advised her to return to work.

Following Dr. Harriman's advice, the Plaintiff returned to work on September 27, 1993. While turning a patient on her first day back to work, Plaintiff felt pain in her arms, back and neck and reported the pain to the nursing supervisor. Unable to work, Plaintiff went to Eastwood Hospital for treatment and was told that the hospital could not treat her at that time due to her employer's refusal to pay.

Without first talking to her employer about alternative treatment for her injuries, the Plaintiff went to the Regional Medical Center at Memphis ("the Med") for treatment on

September 28, 1993, complaining of pain in her back, neck and right hand and numbness in her arms and shoulders. After undergoing an electromyogram test, doctors at the Med diagnosed Plaintiff as having bilateral carpal tunnel syndrome.

On October 25, 1993, Plaintiff returned to the Med for neurology treatment and was seen by Dr. Iqbal. After an examination, Dr. Iqbal gave the Plaintiff a written statement authorizing her to return to work but limiting her work to non-strenuous labor.

Plaintiff was thereafter treated at the Med on November 1 and November 15, 1993, and diagnostic tests were performed on the Plaintiff on November 23 and December 6, 1993. Plaintiff also underwent physical therapy at the Med and was instructed to do certain exercises for her hands. On December 7, 13, and 29, 1993, Plaintiff received follow-up care. Plaintiff's last visit to the Med was in April 1994.

In January 1994, Plaintiff returned to Dr. Harriman for an updated evaluation of her condition. Because Plaintiff had been previously diagnosed with bilateral carpal tunnel syndrome at the Med, Dr. Harriman did not examine the Plaintiff for carpal tunnel difficulties. Rather, Dr. Harriman's examination was limited to Plaintiff's neck and shoulder problems. After taking x-rays of the Plaintiff's shoulder, Dr. Harriman found no physical problems and recommended that she return to work.

After receiving Dr. Harriman's written statement recommending that Plaintiff return to "light duty" work, Plaintiff returned to work as a health aid on March 14, 1994. November 18, 1994, the Defendant told Plaintiff that she had been placed on a medical leave of absence without pay. In July 1995, Plaintiff received a letter from the Defendant stating that her position at Oakville Health Care Center had been terminated because of job abandonment.

On June 6, 1994, Plaintiff sought the assistance of Dr. Rommel Childress, an orthopedic surgeon. Plaintiff came to Dr. Childress complaining of pain in the neck, back,

4

bilateral wrist and hand.  Dr. Childress' evaluation of the Plaintiff revealed that she had a "history of acute cervical and lumbar spine strain and carpal tunnel syndrome with some aggravation with work activities." Upon prescribing medications for the Plaintiff and advising her to return to him in three weeks for follow-up care, Dr. Childress advised the Plaintiff to return to light duty work activities.

Complaining of pain in the neck, back, wrist, hand and right arm and numbness and tingling in both hands, Plaintiff returned to Dr. Childress for follow-up care on June 23, 1994; August 8, 1994; August 29, 1994; September 29, 1994; and on November 4, 1994. On November 4, 1994, Dr. Childress gave Plaintiff a note recommending that she return to work but limiting her work to light-duty tasks.

Dr. Childress diagnosed the Plaintiff as having acute and chronic cervical and lumbar spine strain as well as carpal tunnel syndrome.  Based upon Plaintiff's absence of pain in the back, neck, arm, hand and wrist before the July 31, 1993 work accident, Dr. Childress opined that it was the July 31, 1993 occurrence which precipitated the Plaintiff's neck, back and carpal tunnel problems. Dr. Childress further opined that Plaintiff's neck and back difficulties along with her carpal tunnel syndrome were aggravated by her return to work.

Relying upon the American Medical Association ("AMA") guidelines, Dr. Childress assigned a sixteen percent medical impairment rating to Plaintiff's body as a whole due to her injuries.  In addition, because of Plaintiff's carpal tunnel condition, Dr. Childress testified that the Plaintiff would require future medical care and treatment.

On February 10, 1995, Plaintiff returned to Dr. Harriman at the request of the Defendant.  Upon examining the Plaintiff for carpal tunnel syndrome, Dr. Harriman's tests revealed no signs of carpal tunnel difficulties.  However, assuming that the Plaintiff did have carpal tunnel syndrome as the Med had previously diagnosed,  Dr. Harriman opined that Plaintiff's carpal tunnel condition could not have developed as a result of her July 31,

1993 accident at work. Dr. Harriman found no permanent impairment upon his examination of the Plaintiff and again recommended that she return to work.

At the request of the Defendant, Dr. Joseph Boals, an orthopedic surgeon, evaluated the Plaintiff on November 28, 1995. After evaluating her history, performing a physical examination, and taking x-rays, Dr. Boals determined that Plaintiff was suffering from bilateral carpal tunnel syndrome. Based upon the AMA guidelines, Dr. Boals attributed a twelve percent medical impairment rating to Plaintiff's body as a whole due to her carpal tunnel condition. Dr. Boals recommended surgery for Plaintiff's carpal tunnel condition but stated that Plaintiff's medical impairment rating would probably not improve after the surgery.

Dr. Boals further testified that if Plaintiff's July 31, 1993 accident caused Plaintiff's bilateral carpal tunnel problems, Plaintiff should have complained about numbness, tingling and/or pain in her hands within three to six weeks of the July 31, 1993 occurrence.

Although Plaintiff complained of acute cervical and lumbar strain and shoulder contusion, Dr. Boals found no objective findings that could support Plaintiff's subjective complaints. Dr. Boals found no impairment to Plaintiff's back or shoulder.

Following the advice of her attorney, Plaintiff visited Dr. Greg Cates, a licensed health and rehabilitation counselor, on January 25, 1996. Based upon a review of the depositions of Dr. Harriman, Dr. Childress and Dr. Boals and upon his own assessment of the Plaintiff, Dr. Cates opined that Plaintiff will lose approximately thirty-five percent of her vocational potential if she continues to be limited to light-duty work due to her injuries.

After hearing the proof which consisted of the foregoing facts, the trial court made the following findings of fact. The Plaintiff suffered a work-related injury on or about July 1993 and reported that injury to her employer. Based upon the deposition testimony of Dr. Childress, the Plaintiff's July 1993 accident triggered Plaintiff's carpal tunnel syndrome.

As a result of her accident, Plaintiff is no longer able to return to her former position as a nursing assistant which requires the lifting and turning of patients.

## LAW

The two issues before this Court are:

1) Whether the Plaintiff sustained any permanent disability or impairment which arose out of and in the course of her employment with the Defendant; and

2) Whether the trial court's award to the Plaintiff was excessive.

Our standard of review in workers' compensation cases is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the factual findings, unless the preponderance of the evidence is otherwise. T.C.A. § 50-6-225(e)(2) (Supp. 1996); Spencer v. Towson Moving and Storage, Inc., 922 S.W.2d 508, 509 (Tenn. 1996); Fink v. Caudle, 856 S.W.2d 952, 958 (Tenn. 1993). This standard of review requires an in depth examination into the trial court's factual findings and conclusions. Galloway v. Memphis Drum Serv., 822 S.W.2d 584, 586 (Tenn. 1991); Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 675 (Tenn. 1991). We, therefore, are not bound by the trial court's factual findings; instead, we conduct an independent examination to determine where the preponderance of the evidence lies. Galloway , 822 S.W.2d at 586; Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 456 (Tenn. 1988).

Defendant argues that the Plaintiff did not sustain any permanent disability or impairment which arose out of and in the course of her employment with the Defendant. However, Dr. Childress assigned a sixteen percent medical impairment rating to Plaintiff's body as a whole due to Plaintiff's neck, back, shoulder and carpal tunnel problems. Dr. Boals attributed a twelve percent medical impairment rating to Plaintiff's body as a whole due to her carpal tunnel condition but found no permanent impairment to Plaintiff's back or shoulder. Dr. Harriman found no permanent injuries or impairments upon his examination of the Plaintiff.

7

In accordance with Dr. Boals testimony that Plaintiff should have complained about numbness, tingling or pain in her hands within three to six weeks of the July 31, 1993 accident if the accident was the cause of Plaintiff's carpal tunnel condition, Plaintiff began complaining of radiating pain and numbness in her right hand and third digit on August 6, 1993, one week after the July 31, 1993 accident at work. Moreover, medical records indicate that Plaintiff continually sought the care and treatment of medical doctors after the July 31, 1993 occurrence for pain in her neck, back, shoulders, arms and hands. Thus, there is substantial evidence in the record indicating that Plaintiff sustained permanent disability or impairment which arose out of and in the course of her employment with the Defendant. We, therefore, agree with the trial court's finding that Plaintiff sustained permanent disabilities due to the July 31, 1993 accident at work.

The Defendant alternatively argues that the trial court's award to the Plaintiff was excessive. Tenn. Code Ann. § 50-6-241(b) provides that a permanent partial disability award in a workers compensation case shall be the product of a medical impairment rating and a statutory multiplier. In cases where a pre-injury employer does not return an employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the employee may receive a maximum permanent partial disability award of six times the medical impairment rating. T.C.A. § 50-6-241(b) (Supp. 1996). Based upon Dr. Boals twelve percent medical impairment rating and upon Dr. Childress' sixteen percent medical impairment rating, the trial court's determination that Plaintiff sustained a forty-five percent permanent partial disability to the body as a whole was well within the trial court's discretion and was supported by the evidence at trial. We, therefore, conclude that the trial court did not err in its award of permanent partial disability to the Plaintiff.

Plaintiff returned to work on September 27, 1993 upon the advice of the Defendant's physician, Dr. Harriman. Again experiencing pain in her arms, back and neck while turning a patient on September 27, 1993, the Plaintiff left work, sought medical treatment and did not return to work until March 14, 1994. We, therefore, agree with the trial court's ruling

8

that the Plaintiff is entitled to temporary total disability from September 27, 1993 through March 14, 1994.

Moreover, based upon Dr. Childress' diagnosis of the Plaintiff's acute and chronic cervical and lumbar spine strain and upon Dr. Childress' testimony that the Plaintiff will incur future medical expenses due to her carpal tunnel condition, the trial court did not err in its decision to award the Plaintiff all future medical expenses reasonably incurred by her for treatment of her cervical and lumbar strain and bilateral carpal tunnel syndrome.

The application of Plaintiff to declare this a frivolous appeal is respectfully denied.

The judgment of the trial court is hereby affirmed. Costs on appeal are taxed to Appellant for which execution may issue if necessary.


_____
_____                                                    HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.

9