IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2019 Session

**JIMMY WAYNE HELTON v. EARL LAWSON**

**Appeal from the Circuit Court for Hawkins County**
**No. CC17CV150     Beth Boniface, Judge**

_____

**No. E2018-02119-COA-R3-CV**

_____

The plaintiff sued the defendant for negligence after he was injured in a construction accident on the defendant's property. The defendant claimed that he was not the employer of the plaintiff. Following a trial, the jury returned a verdict in favor of the defendant and awarded the plaintiff no damages. The plaintiff appeals. We reverse the jury's verdict only as to damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in part; Affirmed in part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Jimmy Wayne Helton, pro se.

Earl Lawson, pro se.

**OPINION**

**I. BACKGROUND**

In the fall of 2012, local "handyman" Gene Housewright was planning to help the defendant, Earl Lawson, construct a house. The plaintiff, Jimmy Wayne Helton, contacted Housewright seeking employment.[1] According to Helton, Housewright informed him that Lawson was going to build his own home and would need laborers for

---

[1] Helton stated: "I went and asked him if he had any extra work, something he didn't want to do, couldn't get to . . . ." Housewright testified that the electrician who had worked on the build was Helton's brother, who mentioned that his sibling was looking for work.

that project. On November 6, 2012, the day of the accident, Housewright and another worker "started assembling bracing to screw it to the house for [a] board to sit on." Later that morning, Helton was standing on the board while hanging vinyl siding. Another worker was on the other end of the board and one was on the ground handing up the pieces of siding. According to Helton, as he started to nail up a piece of siding, the board flew out from under him. It appears that the bracing pulled loose from the house and collapsed, sending Helton feet first into a footer ditch containing concrete. The worker handing up the siding to Helton testified at trial that "[t]he board come loose, and he fell straight down, and the walk board was on top of his leg when we got him back up."

Despite Lawson attempting to take him to the emergency room, Helton, believing that he had only suffered a sprained ankle, refused to go. About 30 days after the injury, however, Helton informed Lawson that the ankle was not improving and that he needed to see a doctor. He requested and was provided Lawson's insurance information. After evaluation, Helton was given a brace boot for a fractured ankle. He was informed that Lawson's insurance would not cover the work-related accident, as Lawson did not carry workers' compensation insurance or hold a valid certificate of insurability under the Workers' Compensation Act. Helton eventually learned that in addition to the fractured ankle, he had sustained other related painful and permanent personal injuries in the fall.

Rather than seeking Workers' Compensation benefits, Helton brought this action and the prior nonsuited lawsuit in tort for negligence. Helton asserted that because Lawson failed to have a certificate of insurability and did not insure Helton on the date of the accident, he was entitled to seek his remedy in tort. He argued that Lawson employed him and should have had workers' compensation coverage at the time of the accident. He further contended that Lawson was the provider of the unsafe and defective bracing equipment and breached his duty of care to Helton and proximately caused the damages Helton sustained. Lawson denied liability on the ground that he was not Helton's employer and was not responsible for the negligent acts of Housewright and his employees.

Helton moved for partial summary judgment on the issue of liability – duty and breach of duty. He asserted that Lawson, on the date of the accident: (a) did not have a proper certificate of insurability showing that he had complied with the Workers' Compensation Act; (b) did not carry Workers' Compensation Insurance on any of the persons he employed; and (c) had no Workers' Compensation Insurance coverage on Helton. Helton argued that Tennessee Code Annotated section 50-6-405(a) required an employer to "[i]nsure and keep insured" his liability under the Act, and to "[p]ossess a valid certificate of authority from the commissioner of commerce and insurance by furnishing satisfactory proof" of his ability to pay all claims arising under the Act. Helton relied upon section 50-6-406(b), which provides as follows:

> If an employer fails to comply with 50-6-405, then during the

continuance of the failure, the employer shall be liable to an injured employee . . . for damages to be recovered as if this chapter had not been enacted . . . ; and in the case suit for damages is brought instead of a suit to recover compensation under this chapter, the employer, when sued, shall not be allowed to set up as defense to the action that the employee was negligent or that the injury was caused by negligence of a fellow servant or fellow employee, or that the employee had assumed the risk of injury.[2]

Helton thus contended that Lawson was not allowed to set up the defense that Helton was negligent, as the statute's terms negate any comparative fault defense. He further argued that Lawson could not "pawn" the accident off on a supervisory employee (Housewright), as Lawson would be precluded from raising the defense that the injury was "caused by negligence of a fellow servant or fellow employee."

In response, Lawson asserted reliance on Tennessee Code Annotated section 50-6-106(1)(B)(2) relating to exemption of "casual employees"[3] from the provisions of the Workers' Compensation Act, and sections 50-6-902(b)(4) and (b)(5), exempting from coverage a construction services provider[4] who is either performing work directly for the owner of the property or is employed to provide services, maintenance, or improvements on the construction services provider's own property. Helton replied that the test of casual employment is whether the employee is employed in the usual course of trade, business, profession or occupation *of the employer*, and that the period of time the employee is employed is immaterial to this test (emphasis added). He argued that Lawson had admitted that he was in the construction business, negating the "casual employee" defense. Thus, contended Helton, Lawson could not rely on Tennessee Code Annotated section 50-6-102(1)(B)(2).

As to section 50-6-902(b)(4), Helton argued that it applied only to those who totally subcontract out work on their own property and he asserted that there was no allegation that Lawson did not supervise the work of Helton and the others. Helton further contended that Lawson affirmed in the permit that he was the principal contractor on the job, negating the section 50-6-902(b)(4) exemption. As to section 50-6-902(b)(5),

---

[2] The "institution and prosecution to final judgment of a suit for damages shall be deemed a waiver of a right to claim compensation under" the Workers' Compensation Act. Tenn. Code Ann. § 50-6-406(c).

[3] "Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession or occupation of the employer." Tenn. Code Ann. § 50-6-106(1)(B)(2).

[4] A "construction services provider" means any person or entity engaged in the construction industry. Tenn. Code Ann. § 50-6-901(5).

Helton asserted that a construction services provider like Lawson would be exempt from compliance with the terms and provisions of the Workers' Compensation Act if he himself was "building a dwelling or other structure, or performing maintenance, repairs, or making additions to structures, on the construction service provider's own property," but that the exemption was inapplicable because Lawson was not building the house for himself and had sold the home.

Lawson admitted that he carried no certificate of compliance or any workers' compensation insurance on the date of the accident. He contended, however, that summary judgment was inappropriate because there was a disputable issue of material fact as to who served as Helton's employer. Lawson relied on an affidavit in which Housewright maintained that it was he who had hired Helton and that "[a]t all times any individual who worked on the home at issue worked for me at my direction and did what I told them by way of their work efforts."[5]

The trial court ruled that summary judgment was not appropriate because Helton's employment status was in dispute. The jury trial came to be heard on July 2, 2018.

At trial, Lawson again acknowledged that he did not have workers' compensation insurance. Lawson contended that because the non-party Housewright was Helton's employer, Housewright would be at fault and responsible for any injuries Helton could prove.

Lawson admitted that the project's accounts were in his name, that the invoices for materials bore his name, that he paid the bills, and that he basically controlled the operation. He acknowledged that he secured the building permit in his name, affirming on the form the following: "I am a record owner of the property on which the work is to be performed and this residential structure is for my own individual use and is not for sale, lease or rent . . . ."; "I will perform all work for which the building permit was issued . . . and agree to ensure anyone hired must show proof of license . . . ."; "I am not hiring a construction manager to oversee the project[,]"; and "[S]hould I cease to act as the owner-builder of the project, and hire a contractor to complete the project, . . . the contractor will apply for a new permit." In essence, by obtaining the building permit in his name, Lawson agreed that he would be acting as his own "general contractor" or "prime contractor" on the project.[6] Despite signing an acknowledgment that he had "read

---

[5] It appears that Housewright also did not have workers' compensation coverage.

[6] "General contractor" means the person or entity responsible to the owner or developer for the supervision or performance of substantially all of the work, labor, and the furnishing of materials in furtherance of the construction, erection, remodeling, repair, improvement, alteration or demolition of a building, structure or other undertaking and who contracts directly with the owner or developer of the building, structure or other undertaking; "general contractor" is also referred to as a prime contractor. Tenn. Code Ann. § 50-6-901(10); *Winter v. Smith*, 914 S.W.2d

the important notices document and understand the requirements and responsibilities that accompany a Homeowner's Permit and that I have truthfully completed this application," Lawson testified that he did not read the notices on the building permit application; rather, he just marked what "[t]he lady told me to mark – to answer these questions and sign here." Lawson asserted that he did not understand that his answers on the permit meant that he "couldn't hire people to help . . . work on that home or get Gene to run the job or anything like that." He stated that he had built other buildings and had never secured a permit.[7]

Lawson testified that he did not witness Helton's fall, but when he arrived, Helton declared to him that the injury was just an ankle sprain. Lawson claimed that he was not involved in any way with the bracing and did not provide any equipment or tools. He asserted that the bracing was hand built by Housewright, who, with the help of another worker, assembled it to "screw it to the house for the board [a piece of aluminum] to sit on." Lawson did comment that perhaps the bracing did not collapse but rather that Helton was under the influence of marijuana or alcohol, or a combination of the two, when he fell. Suggestions that drug use was an issue, were made throughout the trial, by the defense but, no proof of Helton's impairment was established. Another witness, the worker who was handing the vinyl up to Helton, opined that Helton was not impaired and was able to do his job.

_____

527, 539 (Tenn. 1995). A general contractor is normally responsible for obtaining the necessary construction permits and for hiring and supervising the work of the subcontractors on the project. *Winter*, 914 S.W.2d at 539-40. A contractor is defined in section 62-6-102(2) as one who engages in "contracting." Contracting, according to section 62-6-102(1)(A), includes only those construction activities undertaken "for a fixed price, fee, commission, or gain of whatever nature." *Winter*, 914 S.W.2d at 540. While many of the responsibilities that Lawson took on during the construction would normally be a general contractor's responsibilities, the mere fact that he assumed the responsibilities does not transform an owner into a "contractor." *Id.* at 539-40.

[7] Tennessee Code Annotated section 62-6-103(a)(2)(A & B) recognizes an exemption to state law requiring that licensed contractors be used on all construction projects defined as "contracting" by Tennessee Code Annotated section 62-6-102; however, the exemption only allows a person who owns his own property to construction a single residence, farm building, or other building for individual use in the county of residence, and not for resale, lease, rent, or other similar purpose, provided that no such owner may be allowed to claim the exemption if such owner constructs more than one single residence within a period of two years. The exemption and the provisions of section 13-7-117 require that the owner perform his own work or immediately supervise the work on such person's own property. Failure by the owner to do so, or to use the exemption as a subterfuge to use a non-licensed contractor to perform such work, is a violation of Tennessee Code Annotated sections 13-7-117, 62-6-103, and 62-6-126, which violations constitute criminal offenses. The Workers' Compensation Act requires any person or entity engaged in the construction industry to carry workers' compensation insurance on themselves. Tenn. Code Ann. § 50-6-902(a).

Lawson related that he did not know Helton before the work on the house; rather, according to Lawson, Housewright hired Helton to work for him. Lawson declared that he did not instruct Housewright to hire other workers for the project, but Housewright secured other individuals to work with him. Lawson claimed that he had no control over the laborers – he did not hire or fire any of them nor did he schedule the work hours. Lawson stated that he paid Housewright in cash and was unaware of how Housewright paid the workers. Lawson acknowledged that Housewright never purchased anything with his own money.

Housewright testified that he "was working on [Lawson's house] with a couple of boys that work with me." He stated that he hired Helton upon the suggestion of the electrician, Helton's brother. According to Housewright, Helton "'worked for me,' and I 'was his boss and/or supervisor.' I was the one building the house. [Lawson] paid us, but [Helton] worked for me." Housewright claimed to be "the prime contractor on th[e] house" and was "overseeing the project." He testified that Lawson designed the house, "drawed the prints out and told . . . what he wanted," and "[h]e'd come over there after work of the evening and say if it was all right or not all right." According to Housewright, Lawson paid for everything. In an affidavit, Housewright maintained that he was hired by Lawson to construct the house and that it was his choice who to hire as laborers. He stated that "[a]t all times any individual who worked on the home at issue worked for me at my direction and did what I told them by way of their work efforts." Housewright claimed that "[a]t no time did I ever tell anyone working for me that they worked for anyone other than me," nor "did I ever tell anyone that they would be working for Earl Lawson." He observed that Lawson "had no knowledge" of Helton being hired and probably "did not even know" Helton. As to the bracing, Housewright claimed that Helton helped construct it, and if it was improperly built, it was due to Helton's own negligence. Housewright claimed to be unaware that he lacked the authority to construct a building exceeding $25,000 in value because he was not a licensed contractor. He acknowledged that he smoked two joints of marijuana with Helton the day of the accident before work started.

Helton claimed that Housewright informed the workers that while on Lawson's property, they worked for Lawson. He noted at trial as follows:

> I thought I worked for [Lawson] because [Housewright] introduced me to [him] and told him I was there to help [him] build his house. We shook hands. We went to work. Just because I'd been in around the business for many years, I knew that [Lawson] was the employer, and I knew that he had to have the building permit because it was his property and there was no licensed contractor on the property. It had to be [Lawson]."

- 6 -

According to Helton, Housewright located the experienced workers for the construction of the house for Lawson and served as a supervisor to Lawson on the build. He observed that Housewright would total the hours worked by the workers, and Lawson paid them in cash. Helton acknowledged that Housewright assembled the bracing that failed to support the platform. On appeal, he contends that the bracing was present that morning when he arrived and that Lawson purchased the materials. He asserts that incorrect anchors (screws) were purchased, delivered, and supplied by Lawson for use on the structure. Overall, he claimed Lawson is liable because "it is his job, his property, his job site. He is liable and responsible for his people."

According to Helton, on the day of the accident, he was not under the influence of anything at 9:30 in the morning. He contended that he did not see Housewright smoking marijuana at the job site. Helton testified that the last time he had water skied or used a waterboard was about six years before the accident. He acknowledged that he had suffered falls since the accident because his right ankle will not hold up his weight and his left leg will not "work right" and will "quit working for no reason at all and [with] no warning . . . ." His girlfriend testified that she had witnessed him falling several times. Helton asserted that prior to the accident, he had no problems with his back, neck, or leg, but now every day is a struggle. A physician's testimony confirmed Helton's injuries and observed that Helton had difficulty walking.

After the jury trial, Helton was found to be an employee of the non-party Housewright, 30 percent at fault for his injuries, and entitled to no damages. Housewright was found to be 60% at fault and Lawson 10%.

Helton filed a "Motion for Re-Trial," asserting that the jury did not appear to comprehend their responsibilities pursuant to the jury instructions. He contended that because Housewright was not a licensed contractor and could not obtain a building permit on the project, Lawson should be considered the employer of anyone working on the property – Housewright as well as Helton. According to Helton, pursuant to the building permit, Lawson assumed all responsibility on the project. After the trial court denied the motion for a new trial, Helton filed a timely appeal.

## II. ISSUES

Helton contends that the jury verdict was contrary to the weight of the evidence presented at trial. Helton argues that Lawson, as the permit holder, was responsible for the safety of the persons working on the home. According to Helton, the individual absolutely liable for his injuries was Lawson.

## III. STANDARD OF REVIEW

Rule 13(d) of the Tennessee Rules of Appellate Procedure narrowly limits the role of appellate courts in reviewing the factual findings of a jury. *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 204 (Tenn. Ct. App. 2013). "Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d); *Goodale v. Langenberg*, 243 S.W.3d 575, 583 (Tenn. Ct. App. 2007). "Material evidence is 'evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case.'" *Meals ex rel. Meals v. Ford Motor Co.,* 417 S.W.3d 414, 422 (Tenn. 2013) (quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905)). Material facts may be proven "by direct or circumstantial evidence or a combination of both." *State v. Phillips*, 138 S.W.3d 224, 230 (Tenn. Ct. App. 2003) (citations omitted). Testimony alone may be sufficient to establish a material fact. *See Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 835 (Tenn. Ct. App. 1980) (finding testimony was material evidence to support the jury's verdict); *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *13 (Tenn. Ct. App. Jan. 28, 2002) ("[T]he surgeon's testimony provides the material evidence needed to sustain the jury's determination that the June 28, 1995 wreck left Mr. Henley permanently impaired."). When determining whether there is material evidence to support a jury verdict, we must "take the strongest legitimate view of all the evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, allow all reasonable inferences to sustain the verdict, and discard all countervailing evidence." *Barkes v. River Park Hosp., Inc.*, 328 S.W.3d 829, 833 (Tenn. 2010) (quoting *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006)).

When reviewing a jury's verdict, we "do not recalibrate the jury's preponderance of the evidence assessment" or reevaluate credibility determinations. *Ferguson v. Middle Tennessee State Univ.*, 451 S.W.3d 375, 380 (Tenn. 2014). Accordingly, "[w]here there is material evidence to support the verdict, the judgment will be affirmed even though the testimony of one or more witnesses supports a contrary verdict." *Higgins v. Channel Five Television Co.*, No. 89-127-II, 1989 WL 115217, at *1 (Tenn. Ct. App. Oct. 4, 1989) (citing *City of Chattanooga v. Ballew*, 354 S.W.2d 806 (Tenn. Ct. App. 1961); Tenn. R. App. P. Rule 13(d)).

## IV.  DISCUSSION

### Workers' Compensation[8]

The purpose of the Workers' Compensation Law is to provide a reliable and equitable remedy to workers who are injured on the job, while limiting the liability to which the employer is exposed. *See Clanton v. Cain-Sloan Co.,* 677 S.W.2d 441, 443 (Tenn. 1984); *Sasser v. Averitt Express*, 839 S.W.2d 422, 429 (Tenn. Ct. App. 1992). Tennessee Code Annotated section 50-6-101, et seq. The law requires employers to compensate employees for injuries arising out of and occurring in the course of employment. Tenn. Code Ann. § 50-6-103. Employers and employees in Tennessee subject to the Workers' Compensation Law "shall, respectively, pay and accept compensation for personal injury or death by accident arising out of and in the course of employment without regard to fault as a cause of the injury or death[.]" Tenn. Code Ann. § 50-6-103(a)(2008).[9] An injury must arise "primarily out of and in the course and scope of employment that causes . . . the need for medical treatment." Tenn. Code Ann. § 50-6-102(14). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.,* 163 S.W.3d 673, 678 (Tenn. 2005).

Generally, only employers with five or more employees are required to provide workers' compensation coverage for their employees. Tenn. Code Ann. § 50-6-106(5). However, this limitation does not apply to the construction industry, "perhaps because of the dangers arising in many construction trades and because many small contractors employ fewer than five workers. *CNA (Continental Cas.) v. King*, No. M2004-02911-COA-R3-CV, 2006 WL 2792159, at *4 (Tenn. Ct. App. 2006). *See* Tenn. Code Ann. § 50-6-102(11); Tenn. Code Ann. § 50-6-902.

As noted in *CNA (Continental Cas.),*

> Tennessee Code Annotated [section] 50-6-113(f)(1)[10] provides that **"any person engaged in the construction**

---

[8] Extensive changes in the workers' compensation system in Tennessee took effect on July 1, 2014, by legislation originally enacted in 2013. The submission and disposition of workers' compensation claims arising on or after July 1, 2014, was taken out of the circuit and chancery courts of the State. There is now a court of workers' compensation claims. *See* 2013 Tenn. Pub. Acts, c. 269.

[9] Helton's injury occurred prior to the amendment of the statute in 2014.

[10] The legislature in 2010 deleted Tennessee Code Annotated section 50-6-113(f) and (g), effective March 1, 2011, and adopted Tennessee Code Annotated Part 9 – Construction Services Providers, §§ 50-6-901 et seq.

**industry, including principal contractors, intermediate contractors, or subcontractors,**[11] **shall be required to carry workers' compensation insurance. This requirement shall apply whether or not the person employs fewer than five (5) employees.** Sole proprietors and partners shall not be required to carry workers' compensation insurance on themselves. . . ."

*Id.*(emphasis added).

Tennessee Code Annotated section 50-6-901, et seq. applies to the construction industry.

Any person engaged in construction is required to carry workers' compensation insurance regardless of whether the provider employs fewer than five employees. Tenn. Code Ann. § 50-6-902(a). The statutory provision provides as follows:

> (a) Except as provided in subsection (b), **all construction services providers shall be required to carry workers' compensation insurance on themselves.** The requirement set out in this subsection (a) shall apply whether or not the provider employs fewer than five (5) employees.
>
> (b) To the extent there is no restriction on applying for an exemption pursuant to § 50-6-903, a construction services provider shall be exempt from subsection (a) if the provider:
>
> …
>
> (4) Is a construction services provider performing work directly for the owner of the property; provided, however, that this subdivision (b)(4) shall not apply to a construction services provider who acts as a general or intermediate contractor and who subsequently subcontracts any of the work contracted to be performed on behalf of the owner;

---

[11] This court has previously defined "subcontractor" in the construction context as "a person who has a contract with the general or prime contractor to perform a portion of the work that the general or prime contractor has already contracted with the owner to perform." *Winter v. Smith*, 914 S.W.2d 527, 539 (Tenn. Ct. App. 1995). This definition of "subcontractor" requires the existence of at least two contracts-one between an owner and the general or prime contractor and another between the general or prime contractor and the subcontractor. *Id.*

- 10 -

(5) Is a construction services provider building a dwelling or other structure, or performing maintenance, repairs, or making additions to structures, on the construction service provider's own property; or

(6) Is a provider whose employment at the time of injury is casual as provided in § 50-6-106.

…

(d) **Nothing in this part shall be construed as exempting or preventing a construction services provider from carrying workers' compensation insurance for any of its employees.** The requirement set out in this subsection (d) shall apply whether or not the provider employs fewer than five (5) employees.

Tenn. Code Ann. § 50-6-902 (2010 Pub.Acts, c. 1149, § 13, eff. March 1, 2011; 2011 Pub.Acts, c. 422, § 4.) (Section applicable to injuries occurring prior to July 1, 2014).

(emphasis added).

When Lawson obtained the building permit, he affirmed in an affidavit that he was **"record owner of the property on which the work is to be performed."** (Emphasis added.). He further asserted that he would **"perform all work for which the building permit was issued"** and "**agree[d] to ensure anyone hired must show proof of license**." (Emphasis added.). Lawson acknowledged that he was **"act[ing] as the owner-builder of the project"** and was **"not hiring a construction manager to oversee the project."** (Emphasis added.). An owner of property may be considered his own principal contractor. *Brown v. Canterbury Corp.*, 844 S.W.2d 134, 136-37 (Tenn. 1992) (citing *Stratton v. United Inter-Mountain Telephone Co.*, 695 S.W.2d 947, 952 (Tenn. 1985)). Lawson was serving as the general contractor.[12] But was he Helton's employer?

### Employer/Employee

To establish that an employee-employment relationship existed, the claimant must be an employee and not an independent contractor or a casual employee. *Bargery v.*

---

[12] Any "person that owns property and constructs on the property single residences, farm buildings or other buildings for individual use, and not for resale, lease, rent or other similar purpose, is exempt from the requirements" of the licensing law. Tenn. Code Ann. § 62-6-103(2)(A).

- 11 -

*Obion Grain Co.,* 785 S.W.2d 118, 121 (Tenn. 1990). The determination of whether an individual is characterized as an employee or an independent contractor is a question of law, *Cromwell Gen'l Contractor, Inc. v. Lytle*, 439 S.W.2d 598, 600 (Tenn. 1969), which we review de novo with no presumption of correctness. *Overstreet v. TRW Commercial Steering Div.,* 256 S.W.3d 626, 630 (Tenn. 2008). No single aspect of a work relationship is conclusive in making this determination, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.,* 795 S.W.2d 125, 127 (Tenn. 1990).

The following factors shall be considered in making the determination:

(i)      The right to control the conduct of the work;
(ii)     The right of termination;
(iii)    The method of payment;
(iv)     The freedom to select and hire helpers;
(v)      The furnishing of tools and equipment;
(vi)     Self-scheduling of working hours; and
(vii)    The freedom to offer services to other entities.

Tenn. Code Ann. § 50-6-102(12)(D). *See Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171 (Tenn. 2001); *Stratton*, 695 S.W.2d 947 (Tenn. 1985); *Barber v. Ralston Purina*, 825 S.W.2d 96 (Tenn. Ct. App. 1991).

The factors are not absolutes that preclude examination of each work relation as a whole and are no more than a means of analysis. *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656-57 (Tenn. 1982) (citing *Jackson Sawmill v. West*, 619 S.W.2d 105 (Tenn. 1981)). While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Galloway v. Memphis Drum Service*, 822 S.W.2d 584, 586 (Tenn. 1991). Another factor that has gained significance is the right of termination. *Masiers*, 639 S.W.2d at 656 (citing *Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858 (Tenn. 1976)). "As noted in *Masiers*, 'the power of a party to a work contract to terminate the relation at will is contrary to the full control of work activities usually enjoyed by an independent contractor.'" *Boruff*, 795 S.W.2d at 127 (internal citation omitted).

When an injured worker files a claim for a workplace injury, the burden of proving that the worker is an independent contractor rather than an employee rests on the employer. *Galloway*, 822 S.W.2d at 586; *Jones v. Crenshaw*, 645 S.W.2d 238, 240 (Tenn. 1983). Where there is any doubt as to whether the worker is an employee or an independent contractor, the doubt must be resolved in favor of the former. *Seals v. Zollo*, 327 S.W.2d 41, 44 (Tenn. 1959).

Counsel for Helton argues that Lawson was the employer of the plaintiff:

> [W]as Mr. Lawson required to carry worker's compensation on Mr. Helton at the time of this accident or to cover him under the Tennessee Worker's Compensation Act? The answer is yes. He was a construction services provider. . . .
>
> . . . [W]ith respect to the worker's compensation, [Lawson] was supposed to insure them under worker's comp. If he didn't insure them under worker's comp, then [Helton] gets all his damages regardless of the fault. He can't set up . . . anything about Mr. Helton being at fault. . . .

Looking to the plain language of the statutory provisions and upon reviewing the building permit and other evidence of record, Lawson was serving as the general contractor. What role did Housewright play? He was serving as an independent contractor hired by Lawson. An independent contractor is "one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains [a] result." *Galloway*, 822 S.W.2d at 587 (internal citations omitted). Most of the factors reveal that Housewright had the right to control the conduct of the work, the right to schedule working hours, the freedom to select and hire helpers, and the right of termination. An individual who contracts directly with the owner of the property is not a "subcontractor" even if the owner holds himself out as, and performs the duties of, a general contractor. *Winter*, 914 S.W.2d at 539-40. Thus, under the facts of this case, Housewright was not a "subcontractor," as he contracted directly with Lawson, the owner of the property and general contractor.

Helton sued Lawson as his employer instead of Housewright in tort "for damages to be recovered as if [Workers' Compensation Act] had not been enacted." The jury determined that Housewright, not Lawson, was the employer. As noted, we must "take the strongest legitimate view of all the evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, allow all reasonable inferences to sustain the verdict, and discard all countervailing evidence." *Barkes*, 328 S.W.3d at 833. We find that material evidence supports the determination of the jury that Helton was the employee of the non-party independent contractor Housewright, rather than Lawson.

"[T]he institution and prosecution to final judgment of a suit for damages [is] a waiver of a right to claim compensation under [the Workers' Compensation Law]." Tenn. Code Ann. § 50-6-406(c). Thus, possibly applicable provisions of the Act such as Tennessee Code Annotated section 50-6-914 are not applicable.[13]

---

[13]Generally, the property owner who enters into a contract with an independent contractor

- 13 -

## Negligence

With regard to negligence, our Supreme Court has explained: "[A] negligence claim requires a plaintiff to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate (legal) causation." *See, e.g., Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). Duty is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm. *Cullum v. McCool*, 432 S.W.3d 829, 833 (Tenn. 2013). The existence of a duty is a question of law, but the elements of causation in fact and proximate cause are matters to be resolved by the trier of fact. *Hale v. Ostrow*, 166 S.W.3d 713, 716-19 (Tenn. 2005). Likewise, the determination of damages in a personal injury case is within the province of the finder of fact. *Grandstaff v. Hawks*, 36 S.W.3d 482, 499 (Tenn. Ct. App. 2000).

We have determined that non-party Housewright was an independent contractor employed by Lawson. The general rule is that a premises owner owes an independent contractor hired to perform work on the property a duty to provide a reasonably safe place in which to work. *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996). "This general duty includes the specific responsibility of either removing, or warning an independent contractor of, any hidden or latent dangers on the property." *Id.* Ordinarily, an employer is not liable for the negligence of an independent contractor. *Pryor v. Southbrook Mall*, No. 02A01-9709-CV-00217, 1998 WL 802005, at *4 (Tenn. Ct. App. Nov. 18, 1998).

In premises liability cases, persons in control of real property have a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises. *Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 65 (Tenn. Ct. App. 1992). Under Tennessee law, the employee of an independent contractor enjoys the status of an invitee while performing work on the premises of the owner-contractee. *Dempster Bros. Inc. v. Duncan*, 452 S.W.2d 902, 906 (Tenn. Ct. App. 1969). As a result of the employee's status as an invitee, the premises owner owes the employee "the duty to exercise reasonable care to see that an employee has a reasonably safe place to work." *Id.*

---

to have work performed on the owner's property is not liable for compensation as a "statutory employer" to the employees of the contractor. *See Tolan v. Brown*, No. 03501-9603-CH-0027, 1996 WL 654116 (Tenn. WC Panel Nov. 5, 1996). However, a property owner may, if the owner undertakes some direct supervisory control over the work of another contractor's employee, be a "principal contractor" within the meaning of the section. *Brown*, 844 S.W.2d at 136-37 (Tenn. 1992); *Acklie v. Carrier*, 785 S.W.2d 355, 357-38 (Tenn. 1990).

- 14 -

In *Johnson*, we relied on the Tennessee Pattern Jury Instructions, Civil (2d ed.), which state in pertinent part:

> An owner of premises who employs a contractor to perform work on the property, but who remains in control of the premises where the work is being done, owes to the employees of the contractor a duty to exercise ordinary care in the management of the premises in order to avoid exposing the employees to an unreasonable risk of harm.
>
> If, however, the contractor had complete control of the premises where the accident occurred and the owner had retained no control of that part of the premises except to the extent of determining if the work was being performed according to the contract, then the owner owes no duty of care to the employees of the contractor.
>
> The rule may be more concisely stated. The law places the duty upon the person in control of premises to exercise reasonable and ordinary care, under the circumstances, not to cause injury to one lawfully upon the premises. *See Ruth v. Ruth*, 372 S.W. 2d 285 (Tenn. 1963).

*Johnson*, 837 S.W.2d at 65 (citing T.P.I. – CIVIL 9.06 Duty to Workers – Control, Tenn. Prac. Pattern Jury Instr. T.P.I. – Civil 9.06 (2d ed.)).

The trial court properly laid out the law of negligence. Further, it specifically addressed the fact that Housewright was "not a party to this lawsuit," but that Lawson "claims that . . . Housewright was at fault and has the burden of proving this fault." The court advised the jury that despite Housewright not being a party, "it is necessary that you determine whether . . . Housewright was at fault and determine the percentage of fault, if any, chargeable to him."

On appeal, we must give the verdict "the most favorable interpretation and give effect to the intention of the jurors if that intention be permissible under the law and ascertainable from the phraseology of the verdict." *Hogan v. Doyle*, 768 S.W.2d 259, 263 (Tenn. Ct. App. 1988) (quoting *Templeton v. Quarles*, 374 S.W.2d 654, 660 (Tenn. Ct. App. 1963)). The verdict must be upheld if, after examining it, "the court is able to place a construction thereon that will uphold it." *Id.* The jury found that Lawson was only responsible for 10% of the negligence in this matter. Upon our review, we find that material evidence supports the determination of the jury.

- 15 -

## Damages

The purpose of compensatory damages is to compensate a party for the loss of injury caused by a wrongdoer's conduct. *Inland Container Corp. v. March*, 529 S.W.2d 43, 44 (Tenn. 1975). The goal is to restore the injured party, as nearly as possible, to the position the party would have been in had the wrongful conduct not occurred. *Beaty v. McCraw*, 15 S.W.3d 819, 828-29 (Tenn. Ct. App. 1998).

The party seeking damages has the burden of proving them. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). Damages may never be based on speculation or conjecture. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). However, damages become too speculative only when the existence of damages is uncertain, not when the precise amount is uncertain. *Church v. Perales*, 39 S.W.3d 149, 172 (Tenn. Ct. App. 2000). The evidence required to support a claim for damages need only prove the amount of damages with reasonable certainty. *Overstreet*, 4 S.W.3d at 703.

Generally, a plaintiff in a negligence action is entitled to recover reasonable expenses for medical examinations to determine if the plaintiff sustained injuries, even where it is determined that he sustained no injury. *Newsom v. Markus*, 588 S.W.2d 883, 887 (Tenn. Ct. App. 1979). Recovery may be denied, however, for expenses that the jury determines were unreasonable or unnecessary. *Brown v. Chesor*, 6 S.W.3d 479, 484 (Tenn. Ct. App. 1999).

The jury's duty to assess damages necessarily requires a determination of the credibility of the witnesses at trial, and the jury is not bound to accept the medical testimony presented. *Baxter v. Vandenheovel*, 686 S.W.2d 908, 912 (Tenn. Ct. App. 1984); *see Karas v. Thorne*, 531 S.W.2d 315, 317 (Tenn. Ct. App. 1975) ("The fact a given amount is proven as undisputed medical expenses does not prove those expenses were necessary."). Additionally, when a physician's opinion is based on statements given him by the plaintiff as to when pain commenced, the plaintiff's credibility may weigh largely in a jury's acceptance or rejection of expert medical testimony. *See Baxter*, 686 S.W.2d at 912.

The jury form provided, inter alia, as follows:

> (… PROCEED TO QUESTION #7 AND DETERMINE THE PERCENTAGE OF FAULT, IF ANY, OF ALL PERSONS LISTED.)
>
> 7. Considering all the fault at 100 per cent (100%), what percentage of fault do you attribute to the following?

A. Earl Lawson          _____% (0-100%)
B. Jimmy Wayne Helton    _____% (0-100%)
C. Gene Housewright      _____% (0-100%)

Total 100%

(IF YOU FIND PLAINTIFF, JIMMY WAYNE HELTON, TO BE 50% OR MORE AT FAULT, STOP HERE, SIGN THIS FORM AND RETURN TO THE COURT. A PLAINTIFF 50% OR MORE AT FAULT IS NOT ENTITLED TO RECOVER DAMAGES. HOWEVER, IF YOU FIND THAT PLAINTIFF IS LESS THAN 50% AT FAULT, PROCEED TO QUESTION #8.)

8      Decide the total amount of damages sustained by the plaintiff, Jimmy Wayne Helton, for the categories of damages below. Do not reduce those damages by any percentage of fault you may have assigned to plaintiff. It is the responsibility of the Judge, after you return your verdict, to reduce the damages you award, if any, by the percentage of fault you assign to plaintiff. What amount of damages, if any, do you find were sustained by plaintiff, Jimmy Wayne Helton?

$ _____: Past and Present Medical, Hospital & Pharmaceutical Expenses
$ _____: Past Loss of Wages
$ _____: Past & Present Physical & Mental Pain & Suffering
$ _____: Loss of Enjoyment of Life

As to fault, the jury found as follows:

D. Earl Lawson          10% (0-100%)
E. Jimmy Wayne Helton    30% (0-100%)
F. Gene Housewright      60% (0-100%)

As to the amount of damages, the jury found as follows:

$ 0: Past and Present Medical, Hospital & Pharmaceutical Expenses
$ 0: Past Loss of Wages

- 17 -

$ 0:  Past & Present Physical & Mental Pain & Suffering

$ 0:  Loss of Enjoyment of Life

The issues before the jury in this case were whether Helton sustained injuries that were proximately caused by the accident, and the amount of damages to which he was entitled.  The jury determined that Helton was entitled to no damages.  On appeal, Helton asserts there is no material evidence to support the jury's award of "zero" damages.  He submits that the jury award of "zero" damages is not supported where the testimony is that Helton suffered an injury requiring medical evaluation and treatment.

Taking the strongest legitimate view of all the evidence in favor of the verdict, assuming the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and discarding all to the contrary, as we must, we find that there was not material evidence to support an award of zero damages.  It is obvious that Helton did incur serious injuries as a result of the accident, notwithstanding the jury's finding of $0 damages in response to question #8.  In similar personal injury cases where the jury has apparently overlooked or ignored uncontroverted proof that an injury was sustained, thereby returning a verdict of zero or other inadequate amount of damages, we have determined that the jury's verdict was not supported by material evidence and accordingly remanded the cases for a new trial on the issue of damages only.  *See Taylor v. Smith*, No. E2002–01158–COA–R3–CV, 2003 WL 21487112 at \*3-4 (Tenn. Ct. App. June 24, 2003); *Dent v. Holt*, No. 01–A–01–9302–CV–00072, 1994 WL 440916 at \*2–3 (Tenn. Ct. App. Aug.17, 1994).  In this case, there is no material evidence to support the jury's award of damages in the amount of $0.  We vacate the verdict and remand for further consideration on the issue of damages.

## V.  CONCLUSION

The jury's verdict awarding zero damages for Helton's claims of personal injury is vacated and the case is remanded for further action consistent with this opinion.  The jury's verdict is affirmed in all other aspects.  Costs on appeal are assessed to the Appellee, Earl Lawson.

_____

JOHN W. MCCLARTY, JUDGE